## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**Jillmarie Rolón-Merced, *et al.*,**
Plaintiffs,

v.                                              **Civil No. 14-1757 (DRD)**

**Héctor Pesquera, *et al.*,**
Defendants.

### OPINION AND ORDER

Pending before the Court is Co-defendants José Díaz-Portalatín ("Díaz-Portalatín); Elvin Santana-Zayas ("Santana-Zayas"); Antonio López-Figueroa ("López-Figueroa"); Damaris Rosado-García ("Rosado-García"); Angel Vega-Cortés ("Vega-Cortés"); and Johnny Rodríguez-Pérez ("Rodríguez-Pérez") and Officer Co-defendant José Díaz-Díaz's ("Díaz-Díaz"), (collectively "Defendants"), *Motion to Dismiss*, filed on July 22, 2016. *See* Docket No. 41. The motion was duly opposed by Plaintiffs on August 8, 2016. *See* Docket No. 42. For the reasons set forth below, Defendants' *Motion to Dismiss* is hereby **GRANTED IN PART** and **DENIED IN PART**.

### I.      Factual Allegations and Procedural Background

Plaintiffs' suit arises from an alleged incident between officers of the Puerto Rico Police Department ("PRPD") and George Michael Díaz-Ortiz ("Díaz-Ortiz" or "decedent").[1] Plaintiffs claim that on October 13, 2013, Díaz-Ortiz was conversing with several friends when PRPD officers arrived at the scene and pointed their firearms at the group. The arrival of PRPD officers appears to have prompted Díaz-Ortiz to run away

---

[1]The Amended Complaint lists Plaintiffs as the following decedents relatives: Jilmarie Rolón-Merced, decedents widow; Joleydaliz Díaz-Rolón and Micaela I. Díaz Rolón, minors and decedents' sole heirs; Brenda I. Ortiz-Cosme, decedents' mother; José Díaz-Ortiz, Bryan Díaz-Ortiz and Franyael Díaz-Ortiz, decedents' siblings.  *See* Docket No. 33, pg. 2.

from said officers. Plaintiffs allege that as Díaz-Ortiz fled from the scene, Officer José Cruz-Delgado ("Cruz-Delgado") shot him in the back. As Díaz-Ortiz laid on the ground, Plaintiffs claim that bystanders witnessed him asking to be taken to a nearby hospital. Additionally, Plaintiffs aver that Officer Co-defendant Cruz-Delgado as well as his partner, Officer Co-defendant Díaz-Díaz, and Supervisory Co-defendant Sergeant Rosado-García, who later arrived at the scene, ignored Mr. Díaz-Ortiz request for medical assistance. Plaintiffs assert that, as a result of the aforementioned PRPD officers' failure to act, Mr. Díaz-Ortiz bled to death on the street.

On March 30, 2016 the Court entered an Opinion and Order regarding Co-defendant Cruz-Delgado's *Motion to Dismiss.* (Docket No. 23). The Court found decedent's heirs to have standing under 42 U.S.C. § 1983 ("Section 1983")[2]. Additionally, the Court upheld/sustained the plausibility of the following Plaintiff's claims: (1) Fourth Amendment excessive use of force and failure to intervene; (2) Fourteenth Amendment failure to provide medical attention; and (3) supervisory liability claims. Because federal claims remained, the Court refrained from assessing Puerto Rico law claims.

Shortly thereafter, on May 23, 2016, Plaintiffs filed an Amended Complaint which included three significant additions. *See* Docket No. 33, pgs. 2-3. First, the Amended Complaint clarified that Plaintiffs Joleydaliz Diaz-Rolón and Micaela I. Diaz-Rolón are the decedent's sole heirs. Because the aforesaid Plaintiffs are minors, Plaintiff Jilmarie Rolón-Merced, the decedent's widow and the minors' mother, appears as their representative. Second, while the original complaint (Docket No. 1) did not list the names of the

---

[2] Because standing is limited to Joleydaliz Díaz-Rolón, Micaela I. Díaz-Rolón and Jilmarie Colón-Merced, Defendants' Motion to Dismiss was granted with respect to Plaintiffs Brenda I. Ortiz-Cosme, José Díaz-Ortiz, Bryan Díaz-Ortiz, Franyael Díaz-Ortiz and Luís Yomar Díaz-Ortiz. *See* Docket No. 23, pg. 20.

Supervisory Co-defendants, the Amended Complaint listed them as follows: (1) Héctor Pesquera, Superintendent of the PRPD at the time of the alleged incident; (2) Coronel Antonio López; (3) Inspector Santiago; (4) Inspector José L. Díaz-Portalatín; (5) Lieutenant Elvin Santana Zayas; (6) Lieutenant Vega-Cortez; (7) Johnny Rodríguez; and (8) Sergeant Damaris Rosado-García. Lastly, the Amended Complaint included the name of a second Officer Co-defendant, Officer José L. Díaz-Díaz.

On July 7, 2016, Defendants filed the *Motion to Dismiss* now pending before the Court. *See* Docket No. 41. Defendants aver the following: (1) Fourth Amendment claims must be dismissed for failure to state a claim because Co-defendants Díaz-Portalatín, Santana-Zayas, López-Figueroa, Rosado-García, Vega-Cortés, Rodríguez-Pérez, and Díaz-Díaz did not partake in the alleged incident of excessive use of force against the decedent; (2) Fifth Amendment claims are inapplicable, given that Defendants are not members or employees of the federal government; (3) Co-defendants Díaz-Portalatín, Santana-Zayas, López-Figueroa, Rosado-García, Vega-Cortés, Rodríguez-Pérez and Díaz-Díaz were not present when Officer Co-Defendant Cruz-Delgado shot the decedent, thus barring Co-defendants' "reasonable opportunity" to intervene; (4) Plaintiffs' Fourteenth Amendment claims relating to Supervisory Co-defendants Díaz-Portalatín, Santana-Zayas, López-Figueroa, Vega-Cortés and Rodríguez-Pérez's purported failure to provide medical care do not state a valid claim given that they were absent from the scene when the alleged request for assistance took place; (5) Plaintiffs' supervisory claims against Supervisory Co-defendants Díaz-Portalatín, Santana-Zayas, López-Figueroa, Rosado-García, Vega-Cortés and Rodríguez-Pérez do not satisfy the direct participation standard, violate constitutional rights, and do not establish a causal link between the behavior of a

3

subordinate and a supervisors' action or lack thereof that could amount to or imply gross negligence; and (6) there are no valid federal claims against Defendants that would allow the Court to exercise its supplementary jurisdiction prerogative.

On August 8, 2016, Plaintiffs filed an Opposition to Defendants' Motion to Dismiss. *See* Docket No. 42. Therein, Plaintiffs argued and clarified the following: (1) Fourth Amendment excessive use of force and failure to intervene claims were not directed at Díaz-Portalatín, Santana-Zayas, López-Figueroa, Rosado-García, Vega-Cortés or Rodríguez Pérez but rather against Officer Co-defendants Cruz-Delgado, who is alleged to have ran after and purportedly shot decedent in the back and Officer Co-defendant Díaz-Díaz, due to his presence at the scene; (2) Fourteenth Amendment failure to provide medical attention claims against Rosado-García and Díaz-Díaz were adequately pled in the Amended Complaint due their alleged inaction while present at the scene; (3) Plaintiffs' supervisory liability claims against Supervisory Co-defendants Díaz-Portalatín, Santana-Zayas, López Figueroa, Rosado-García, Vega-Cortés, and Rodríguez Pérez do not rest on the respondeat superior doctrine, but rather on their acts and omissions regarding the implementation and oversight of policies addressing excessive use of force within the PRPD; lastly, (4) dismissal of Fifth Amendment claims was unopposed.

## II.    Standard of Review for Motion to Dismiss

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." *See Ocasio–Hernandez v. Fortuño–Burset*, 640 F.3d 1, 12 (1st Cir.2011) ("in order to 'show'

4

an entitlement to relief a complaint must contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).' ") (quoting *Twombly*, 550 U.S. at 555) (citation omitted).   Thus, a plaintiff must, and is now required to, present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a).   *Id.* at 570; *See e.g. Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by *Twombly*, 550 U.S. 544, and *Iqbal*, 556 U.S. 662.   "Context based" means that a Plaintiff must allege sufficient facts that comply with the basic elements of the cause of action.   *See Iqbal*, 556 U.S. at 677–679 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a *Bivens* claim, leaving the complaint with only conclusory statements).   First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action.   *Iqbal*, 556 U.S. at 678.   "Yet we need not accept as true legal conclusions from the complaint or 'naked assertion[s]' devoid of 'further factual enhancement.'"   *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir.2009) (quoting *Iqbal*, 556 U.S. at 678) (quoting *Twombly*, 550 U.S. at 557).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief."   *Iqbal*, 556 U.S. at 679.   This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common

sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. *Id*.

The First Circuit outlined two considerations for district courts to note when analyzing a motion to dismiss. *García–Catalán v. United States*, 734 F.3d 100, 104 (1st Cir.2013). First, a complaint modeled on Form 11 of the Appendix of the Federal Rules of Civil Procedure which contains sufficient facts to make the claim plausible is ordinarily enough to surpass the standard prescribed under *Twombly–Iqbal. Id*. at 104. Second, district courts should accord "some latitude" in cases where "[a] material part of the information needed is likely to be within the defendant's control." *Id.* (more latitude is appropriate in cases where "it cannot reasonably be expected that the [plaintiff], without the benefit of discovery, would have any information about" the event that gave rise to the alleged injury) (internal citations and quotations omitted).

### III.    Analysis

#### A.  Section 1983

Section 1983 does not create any independent substantive rights; instead, Section 1983 is only a procedural vehicle to vindicate constitutional and other federal statutory violations brought about by state actors. *See Baker v. McCollan,* 443 U.S. 137, 145, n.3 (1979)("Section 1983 . . . is not itself a source of substantive rights, but [merely provides] a method for vindicating federal rights elsewhere conferred . . . ."); *Albright v. Oliver*, 210 U.S. 266 (1994); *Lockhart-Bembery v. Sauro*, 498 F.3d 69, 74 (1st Cir. 2007); *Cruz-Erazo v. Rivera-Montañez*, 212 F.3d 617 (1st Cir. 2000). Section 1983 provides a mechanism to remedy deprivations of rights that are federally enshrined elsewhere. *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985). Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. 42 U.S.C. § 1983.

When assessing the imposition of liability under Section 1983, we must first ask "(1) whether the conduct complained of was committed by a person acting under the color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 558 (1st Cir. 1989)(citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). Acting under color of state law requires that a "defendant in § 1983 action have exercised power possessed by virtue of state law and made possible only because wrongdoer is clothed with authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988).

Although Section 1983 provides an avenue to remedy many deprivations of civil liberties in federal court, it "does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). The Eleventh Amendment bars lawsuits for monetary damages against a State in federal court, unless said State has waived its immunity or unless Congress has expressly overridden that immunity. *See* CONST. Amend. XI; Will, 491 U.S. at 66 (citing *Welch v. Texas Dept. of Highways and Public Transportation,* 483 U.S. 468, 472-473 (1987) (plurality opinion)); *O'Neill v. Baker*, 210 F.3d 41 (1st Cir. 2000). Furthermore, "neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action." *Johnson v. Rodriguez*, 943 F.2d 104, 108 (1st Cir. 1991). The reasoning follows that a suit against

an official actor is a suit against his office, and by default a suit against the state. *See Will*, 491 U.S. at 71; Brandon v. Holt*, 469 U.S. 464, 471 (1985); *Kentucky v. Graham,* 473 U.S. 159, 165-166 (1985).

Puerto Rico has long been considered a state for Eleventh Amendment purposes. *See Irizarry–Mora v. Univ. of Puerto Rico,* 647 F.3d 9 (1st Cir.2011); *Metcalf & Eddy, Inc. v. P.R. Aqueduct & Sewer Auth.,* 991 F.2d 935 (1st Cir.1993). "The Eleventh Amendment bars the recovery of damages in a federal court against the Commonwealth of Puerto Rico, and, by the same token, it bars the recovery of damages in *official capacity* suits brought against Puerto Rico officials where recovery will come from the public fisc." *Culebras Enterprises Corp. v. Rivera Rios,* 813 F.2d 506, 516 (1st Cir.1987) (citing *Ramirez v. P.R. Fire Service,* 715 F.2d 694, 697 (1st Cir.1983) and *Kentucky v. Graham,* 473 U.S. 159 (1985)) (emphasis in the original); *Maysonet–Robles v. Cabrero,* 323 F.3d 43 (1st Cir.2003). Plaintiffs have sued Defendants only in their individual capacity; therefore, the Court need not conduct an Eleventh Amendment analysis.

In the instant matter, all of the facts alleged by Plaintiffs transpired under the umbrella of the PRPD, an executive agency of the Commonwealth of Puerto Rico. At all relevant times, Defendants were employed by the Commonwealth of Puerto Rico and acted in their official capacities. Furthermore, the alleged conduct occurred within the scope of Defendants' employment, as Defendants' alleged injurious acts owned while conducting a police intervention pursuant to official duties. Further, the individual Defendants were acting under color of state law when the purported conduct transpired, as the alleged rights depravation was committed by employees of the Commonwealth of Puerto Rico

during the course of their employment with the PRPD. Therefore, Section 1983 is an appropriate avenue to remedy Plaintiffs' claims.

### B. Plaintiffs' Fourth Amendment Claims

#### 1. Excessive Use of Force

The United States Supreme Court has held that the appropriate adjudicative standard regarding Plaintiffs' Fourth Amendment claims of excessive use of force by police officers against a potential arrestee is that of objective reasonableness. *See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473-74 (2015) and *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (holding that while there is no one particular test that can be applied automatically in order to uphold an excessive force claim, the following factors should be considered: 1) "'severity of the crime;' 2) 'whether the suspect pose[d] an immediate threat to the safety of the officers' at the scene or bystanders; 3) 'whether the individual [was] resisting arrest or attempting to evade arrest by flight.'")

Applying the aforementioned criteria, the Opinion and Order entered by the Court on March 30, 2016, upheld the plausibility of Plaintiffs' Fourth Amendment excessive use of force claim:

> Based on the facts as pled, the officers' actions seem nonsensical and fail to meet the objective reasonableness standard. Accordingly, the Court finds Plaintiffs have made a plausible allegation of excessive force on the part of the PRPD officers. *See* Docket No. 23, pg. 14.

This Court recognizes that the PRPD officers alluded to in the above-mentioned Opinion and Order were not individually identified but rather referred to as a collective. Analyzing all previous pleadings, this Court infers that the failure to identify the particular officers belonging to the referenced group of PRPD officers can be attributed to the fact that Plaintiffs' first Complaint did not provide a complete list of the individuals that

allegedly witnessed the excessive use of force against the decedent. *See* Docket No. 1. However, Plaintiffs' Amended Complaint provided the previously omitted names of those PRPD officers that were purportedly present at the scene. *See* Docket No. 33, pgs. 2-3.

Defendants now seek specific dismissals for excessive use of force claims as to the following Co-defendants: Díaz-Portalatín, Santana-Zayas, López-Figueroa, Rosado-García, Vega-Cortés, Rodríguez-Pérez, and Díaz-Díaz. Defendants argue that excessive use of force claims should be directed exclusively against Officer Co-defendant Cruz Delgado because he was the only PRPD to shoot decedent in the back and therefore the only PRPD officer to incur in excessive use of force. Furthermore, Plaintiffs clarified in their Opposition to Motion to Dismiss that they did not bring forth claims for excessive use of force against Co-defendants: Díaz-Portalatín, Santana-Zayas, López-Figueroa, Rosado-García, Vega-Cortés, and Rodríguez-Pérez, but rather against Officer Co-defendant Cruz-Delgado for firing his weapon upon the decedent and against Díaz-Díaz for failing to intervene.

While a reciprocal relationship exists between the use of excessive force by a police officer and another police officers' failure to intervene during said acts, this Court will analyze failure to intervene claims under the Fourth Amendment separately. Thus, after a thorough analysis of the pleadings, and considering the pronouncement made by this Court in its March 30, 2016, Opinion and Order, the Court finds that there is "more than a sheer possibility" that Officer Co-defendant Cruz-Delgado acted unreasonably as it pertains to the use of excessive force, particularly since no reason was given as to why Cruz-Delgado fatally shot the decedent instead of using an alternative method to detain him as he fled with his back turned. As pleaded, Plaintiffs have not claimed that the

remaining Co-defendants employed the excessive use of force. Therefore the Court **DISMISSES WITH PREJUDICE,** excessive use of force claims under the Fourth Amendment as to Co-defendants Díaz-Portalatín, Santana-Zayas, López-Figueroa, Rosado-García, Vega-Cortés, Rodríguez-Pérez, and Díaz-Díaz.

### 2. Failure to Intervene

By virtue of the Fourth Amendment, police officers have an affirmative duty to prevent and thus intervene when they witness excessive force.[3] *See Gaudreault* v. *Municipality of Salem*, 923 F.2d 203, 207 n.3 (1st Cir. 1990) ("An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under section 1983 for his nonfeasance."); *see also Calvi v. Knox County,* 470 F.3d 422, 431 n.3 (1st Cir. 2006) (highlighting the appropriateness of the "realistic opportunity" standard when analyzing a failure to intervene claim: "…a bystander-officer who has a realistic opportunity to prevent the use of excessive force by a fellow officer may in certain circumstances be held liable for a failure to intervene.").

---

[3]This Court notes that, in their *Motion to Dismiss*, Defendants presented failure to intervene claims under the Fourteenth Amendment. However, their argument was based on the "reasonable opportunity" standard used in a Fourth Amendment analysis. *See* Docket No. 41, pgs. 8-9. This Court recognizes that even in light of the factual scenario provided in the Amended Complaint, the cause for the PRPD officers' intervention with the decedent remains unclear. Nonetheless, considering the information provided thus far, the controversy at hand should be analyzed under the Fourth Amendment given that the events leading up to the decedent's death did not take place while he was in custody. *See Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed. 2d 443 (1989) (holding that "all claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."); *see also Cummings v. McIntire,* 271 F.3d 341, 344 (1st Cir. 2001) (differentiating Fourth Amendment and Fourteenth Amendment claims: "[c]laims of excessive force by a police officer arising outside the context of a seizure, and thus outside the Fourth Amendment, are analyzed under substantive due process principles.").

Defendants argue that while Officer Co-defendant Díaz-Díaz was present at the scene when the alleged excessive use of force occurred, the factual scenario outlined in Plaintiffs' Amended Complaint accentuates the swiftness of the event and consequently does not present a situation in which Officer Co-defendant Díaz-Díaz would have had a "reasonable opportunity" to deter Cruz-Delgado's actions against the decedent. (*See* Docket No. 41, pg. 9 citing Docket No. 33, pgs. 4-5: "suddenly officers of the PPR arrived running with their firearms at (sic) hand and pointing at the group. Mr. Díaz-Díaz got scared and started running. At that time, Officer Cruz-Delgado shot him in the back."). Admittedly, the factual scenario provided in Plaintiffs' Amended Complaint suggests that in spite of the officers affirmative duty to intervene when witnessing excessive use of force, it is plausible that "the attack came quickly and was over in a matter of seconds", which would thus preclude the officer from being able to intervene in the first place. *See Torres-Rivera v. O'Neill-Cancel,* 406 F.3d 43, 52 (1st Cir. 2005). However, at this pre-discovery stage, the Court cannot reach a definitive conclusion.[4]

In light of the uncertainty surrounding the moment in which the alleged inaction is said to have taken place, whether Officer Co-defendant Díaz-Díaz had a "realistic opportunity" to intervene may be clarified in discovery. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007) (holding that a complaint "…simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement".); *see also García-Catalan v. United States,* 734 F.3d 100, 104 (1st Cir. 2013) ("[T]he [C]ourt finds that modest discovery could provide the missing link for this claim.").

---

[4]For example, the Court is unsure of how much time elapsed between the gunshot and the decedent's death, among other incident-specific facts.

Drawing all reasonable inferences in favor of the Plaintiff, Plaintiffs' failure to intervene claim against Officer Co-Defendant Díaz-Díaz must survive this pre-discovery motion. Accordingly, the Court **DISMISSES WITH PREJUDICE** failure to intervene claims under the Fourth Amendment as to Co-defendants Díaz-Portalatín, Santana-Zayas, López-Figueroa, Rosado-García, Vega-Cortés and Rodríguez-Pérez, who were not at the scene of the incident.

### C. Plaintiffs' claims under the Fifth Amendment against Defendants

The Supreme Court of the United States has consistently ruled that in order for a Fifth Amendment claim to be sustained, defendants must be federal actors. *See Public Utilities Commission v. Pollak*, 343 U.S. 451, 461, 72 S.Ct. 813, 96 L.Ed. 1068 (1952) (holding that the applicability of the Fifth Amendment "concededly appl[ies] to and restrict[s] only the Federal Government and not private persons."); *see also, Natal-Rosario v. Puerto Rico Police Dept.,* 609 F.Supp.2d 194, 201 (D.P.R. 2009). As members of the PRPD, Defendants are state actors; accordingly, due process claims filed against them under the Fifth Amendment are misplaced. As such, we **DISMISS WITH PREJUDICE** Plaintiffs' Fifth Amendment claims as to all Defendants herein.

### D. Plaintiffs' Failure to Provide Medical Attention Claims under the Fourteenth Amendment

Fourteenth Amendment substantive due process requires police officers to provide medical attention to arrestees injured during a police intervention. *City of Revere v. Mass. Gen. Hosp.,* 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983). In the Opinion and Order entered on March 30, 2016, this Court maintained Plaintiffs claim against Officer Co-defendant Díaz-Delgado for failure to provide medical attention under the Fourteenth Amendment:

> Under the First Circuit standard, these facts support the Court finding that **the officers at the scene** may have been deliberately indifferent by "[consciously failing] to provide medical services where they would be reasonably appropriate". *Miranda-Rivera v. Toledo-Davila*, 813 F.3d 64, 74 (1st Cir. 2016) citing *Coscia v. Town of Pembroke,* 659 F.3d 37, 39 (1st Cir. 2011)). *See* Docket No. 23, pg. 16 (emphasis ours).

Defendants now seek to dismiss failure to provide medical attention claims against Supervisory Co-defendants Díaz-Portalatín, Santana-Zayas, López Figueroa, Vega-Cortés, and Rodríguez-Pérez because Plaintiffs' pleadings do not place them at the scene when the alleged request for medical assistance was expressed. The Court notes that in their Opposition to Co-defendants' Motion to Dismiss, the dismissal of failure to provide medical attention claims as to the aforementioned Defendants was unopposed by Plaintiffs. *See* Docket No. 42, pg. 3. Furthermore, Plaintiffs' Amended Complaint limited failure to provide medical attention to Supervisory Co-defendant Rosado-García, and Officer Co-defendants Díaz-Díaz and Cruz-Delgado:

> [t]he officers on the scene, Officer Cruz-Delgado, Díaz-Díaz and Sgt. Rosado-Garcia, who arrived later, failed to provide emergency medical care to Mr. Díaz-Ortiz, or even to call an ambulance during the long period of time in which he was left lying on the street. *See* Docket No. 33, pg. 4.

Adopting the First Circuit standard of "deliberate indifference" articulated in *Miranda-Rivera v. Toledo-Dávila,* 813 F.3d 64 (1st Cir. 2016) and reading the pleadings in the light most favorable to the Plaintiffs, this Court infers that the officers' presence at the scene is a necessary precondition for a valid failure to provide medical attention claim. In other words, for Plaintiffs to adequately plead failure to provide medical assistance claims, Defendants must have been at the scene and witnessed the request for assistance. Given that in their pleadings Plaintiffs indicate that only officers Rosado-García, Officer Co-defendant Díaz-Díaz and Cruz-Delgado were present at the scene when the request for medical care was voiced and ignored, and their presence was unopposed by Defendants,

we hereby **DISMISS WITH PREJUDICE** Plaintiff's claims against Co-defendants Díaz-Portalatín, Santana-Zayas, López Figueroa, Vega-Cortés, and Rodríguez-Pérez.

### E. Supervisory Claims

Supervisor liability under Section 1983 does not rest upon the respondent superior doctrine. *See Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978)*; and Ramírez-Lluveras v. Rivera-Merced,* 759 F.3d 10, 19 (1st Cir. 2014). Instead, as stated in *Guadalupe-Baez v. Pesquera,* 819 F.3d 509, 515 (1st Circ. 2016), supervisor liability under a Section 1983 claim is *sui generis*, wherein the action is based on the supervisors own acts or omissions, which are not necessarily determined by the supervisor's position of authority. In order to successfully plead supervisor liability claims, the First Circuit has articulated a two part test in which the plaintiff holds the burden of proof. First, plaintiff must demonstrate that "the supervisor's subordinates abridged the plaintiff's constitutional rights." *See Guadalupe-Baez v. Pesquera,* 819 F.3d 509, 514-15 (1st Cir. 2016) (citing *Pineda v. Toomey,* 533 F.3d 50, 54 (1st Cir. 2008). Second, that "the [supervisor]'s action or inaction was affirmative[ly] link[ed] to that behavior in the sense that it could be characterized as supervisory encouragement, condonation, or acquiescence or gross negligence amounting to deliberate indifference." *Id.* (quoting *Lipsett v. Univ. of P.R.,* 864 F.2d 881, 902 (1st Cir. 1998)).

In its March 30, 2016, Opinion and Order, this Court understood that given the stage of the proceedings, Plaintiffs claims were plausible enough to meet the First Circuit supervisor liability test:

> Because the information needed to further develop these allegations, namely the training programs these officers were placed in and whether they were reprimanded for their actions in intervening with Díaz-Ortiz, is

under the dominion and control of the PRPD, the Court may not dismiss
these claims at this time. Accordingly, finding that Plaintiffs have made
plausible allegations of a violation of Section 1983, the Court hereby
DENIED Defendants' *Motion to Dismiss* Plaintiffs' Section 1983 claims. *See*
Docket No. 23, pg. 18.

Nevertheless, Defendants now claim that Plaintiffs allegations against the Supervisory
Co-defendants are "not enough to establish a claim of supervisory liability", and merely
present "vague and conclusory" allegations against the Supervisory Co-defendants in
both the Original and Amended Complaints that make up this case. *See* Docket No. 41
pg. 13. Meanwhile, Plaintiffs responded with excerpts from the Amended Complaint in
which they alleged that Supervisory Co-defendants did not implement mechanisms
customarily used to assess officers' use of deadly force, specifically mentioning: Force
Review Boards, Shooting Review Boards, rules regarding conduct chases on foot of
fleeing suspects nor training relating to the treatment of wounded suspects. *See* Docket
No. 42, pgs. 4-7. Additionally, Plaintiffs allege that the lack of implementation on behalf
of Supervisory Co-defendants of "nationally accepted policies" provide the elements to
meet the First Circuit supervisor liability test. *Id.* at 4.

This Court reiterates that given the stage of the proceedings in the case at hand, "[a]
high degree of factual specificity is not required at the pleading stage." *Rodríguez-Reyes
v. Molina-Rodríguez,* 711 F.3d 49, 56 (1st Cir. 2013); see also *also García-Catalan,* 734
F.3d at 104.   While Plaintiffs have not provided specific details as to each of the
Supervisory Co-defendants roles in implementing the "nationally accepted policies", we
are swayed to agree, following the plausibility standard, that the Supervisory Co-
defendants alleged failure in implementing the policies and rules described in Plaintiffs
Amended Complaint, coupled with the Officer Co-defendants' actions, which have led to

allegations of various constitutional violations and Ortiz-Ortiz' death, are sufficient to meet the affirmative link test, at this stage.[5]

Moreover, the only significant change pertinent to supervisory liability claims to have taken place between the time that the March 30, 2016 Opinion and Order was entered and Defendants' *Motion to Dismiss*, which was filed on July 22, 2016, was the addition of the names of the Supervisory Co-defendants in Plaintiffs Amended Complaint which was filed on May 23, 2016. As such, we hereby maintain the Court's position regarding supervisory liability in this matter and **DENY** Defendants' *Motion to Dismiss* as to Supervisory Co-defendants Díaz-Portalatín, Santana-Zayas, López-Figueroa, Rosado-García, Vega Cortés, and Rodríguez-Pérez. lack

### F.  State Law Claims

As per 28 U.S.C. § 1367, federal courts are authorized to hear state law claims as long as the Court has original jurisdiction over the matter at hand. *See Newman v. Burgin,* 930 F.2d 955, 963 (1st Cir. 1991) (holding that "[t]he power of a federal court to hear and to determine state-law claims in non-diversity cases depends upon the presence of at least one 'substantial' federal claim in the lawsuit."). Defendants prayed for the dismissal of Puerto Rico law claims under Article 1802 of the Civil Code of Puerto Rico, 31 L.P.R.A.

---

[5] In *Guadalupe-Baez v. Pesquera,* 819 F.3d 509, 516-17 (1st Cir. 2016), the First Circuit determined that the plausibility threshold for supervisory claims was met in part because the supervisors belonging to the PRPD should have been aware of the problems within the PRPD pertaining to police brutality and lack of proper training. Furthermore, *Guadalupe-Baez* cited three District Court cases which also noted that supervisors within the PRPD should have demonstrated a general understanding of the problems that the PRPD faced regarding the presence and lack of proper measures to eradicate police brutality and absence of proper training. *See Cabrera-Berrios v. Pedrogo,* 21 F.Supp.3d 147, 153 (D.P.R. 2014); *Molina v. Vidal-Olivo,* 961 F. Supp.2d 382, 384-86 (D.P.R. 2013); *Jorge v. Police Dep't of P.R.,* No. 11-2268, 2013 WL 792827, at 3. The timeline of all four cases cited coincides with the controversy in the *Motion to Dismiss* now pending before this Court.

§ 5141, on the grounds that all federal claims would be dismissed. Because federal claims

are present in the case at bar, the Court will refrain from assessing Plaintiffs' supplemental

state law claims at this time. *See Rodríguez v. Doral Mortg. Corp.,* 57 F.3d 1168, 1176-

77 (1st Cir. 1995).

## IV.    CONCLUSION

For the reasons set forth above, Defendants' *Motion to Dismiss* is hereby **GRANTED**

**IN PART** and **DENIED IN PART**.

The surviving claims are as follows:

1) Excessive use of force claims under the Fourth Amendment against Officer Co-defendant Cruz-Delgado;

2) Failure to intervene claims under the Fourth Amendment against Officer Co-defendant Díaz-Díaz;

3) Failure to provide medical attention claims under the Fourteenth Amendment against Supervisory Co-defendant Sergeant Rosado-García, Officer Co-defendants Cruz-Delgado and Díaz-Díaz;

4) Supervisory liability claims against Supervisory Co-defendants Díaz-Portalatín, Santana-Zayas, López-Figueroa, Rosado-García, Vega Cortés, and Rodríguez-Pérez.

The following claims are **DISMISSED WITH PREJUDICE:**

1) Excessive use of force claims under the Fourth Amendment against Co-defendants Díaz-Portalatín, Santana-Zayas, López-Figueroa, Rosado-García, Vega-Cortés, Rodríguez-Pérez, and Díaz-Díaz;

2) Failure to intervene claims under the Fourth Amendment as to Co-defendants Díaz-Portalatín, Santana-Zayas, López-Figueroa, Rosado-García, Vega-Cortés and Rodríguez-Pérez;

3) Fifth Amendment claims against Co-defendants Díaz-Portalatín, Santana-Zayas, López-Figueroa, Rosado-García, Vega-Cortés, Rodríguez-Pérez, and Díaz-Díaz.

4) Failure to provide medical attention claims under the Fourteenth Amendment as to Co-defendants Díaz-Portalatín, Santana-Zayas, López Figueroa, Vega-Cortés, and Rodríguez-Pérez.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 6th day of March, 2017.

/s/ Daniel R. Dominguez
Daniel R. Dominguez
United States District Judge